IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Jimmy Wilson, #295782, | ) | |
| | ) | Civil Action No. 6:07-3889-PMD-WMC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| Dr. Glenn Alewine; and | ) | |
| Director Jon Ozmint, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the defendants' supplemental motion for summary judgment (doc. 18). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

On January 15, 2008, the defendants filed a motion for summary judgment. By order filed January 16, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 8, 2008, the plaintiff filed a motion to amend his complaint, which this court granted on February 26, 2008. The defendants were given through March 28, 2008, to supplement their motion for summary judgment as to any additional claims raised by the plaintiff. The defendants filed their supplemental motion for summary judgment on March 12, 2008. By order filed March 13, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the

plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his opposition to the motion on March 14, 2008. The defendants filed a reply on March 18, 2008, and the plaintiff filed a sur-reply on March 26, 2008.

In his amended complaint, the plaintiff drops the South Carolina Department of Corrections ("SCDC") as a named defendant from the original action and appears to have withdrawn all of the state law based causes of action (doc. 15). The amended complaint raises allegations solely against the individually named defendants, Dr. Glenn Alewine, a physician employed by the SCDC, and Jon Ozmint, the Director of the SCDC, pursuant to 42 U.S.C. § 1983. The plaintiff alleges that these named defendants failed to provide him with an appropriate course of medical treatment during his incarceration at the Broad River Correctional Institution; that Dr. Alewine has ignored a course of treatment that would be beneficial to the treatment of his various medical conditions; and that the Director has created an environment "in which denial of medical care is a virtual certainty" (pl. am. comp. ¶ 21(c)). The plaintiff claims that the defendants' actions constituted a violation of his constitutional rights.

## FACTS PRESENTED

As shown in the plaintiff's medical records, he has encountered the medical staff at SCDC in excess of 400 times since his incarceration in August 2003 (Alewine aff., ex. 1, Medical Records). The plaintiff appears to have had some form of back pain prior to his incarceration, and a review of his intake examination reveals that he was already taking medication for this condition. Throughout his incarceration, the plaintiff sought treatment for a number of varying conditions, including spasmodic torticollis, also known as cervical dystonia. The plaintiff contends that the condition causes him to have

2

uncontrollable and severe muscle contractions, pain, and severely limited range of motion in his neck (am. comp. ¶¶ 6-10).

The records indicate that Dr. Alewine was asked to approve Botox injections for the plaintiff sometime after the plaintiff's visit to Doctor's Clinic on April 26, 2007 (Alewine aff., ex. 1, Medical Records 1-7). Thereafter, the plaintiff received a recommendation for Botox from an outside neurosurgical consultant on May 11, 2007, which was confirmed by SCDC medical staff on May 16, 2007. It appears that Dr. Alewine approved this procedure on May 24, 2007. The plaintiff was examined by the neurologist who would actually administer the Botox on August 8, 2007, and he received an injection of Botox on August 31, 2007 (Alewine aff. ¶¶ 18-21). Throughout this period, the plaintiff was still being treated with the previously approved medications for the torticollis, including Neurontin and Klonopin (Medical Records 1-7). On September 26, 2007, it was noted in the plaintiff's medical records that he was having "some relief" after the Botox injections. It was also noted that Neurontin had been effective, but the plaintiff requested and received a prescription for an increased dosage of Neurontin. The plaintiff also stated that Klonopin helped with both anxiety and muscle pain caused by the torticollis (Medical records 1).

The plaintiff's most recent medical records show that on January 7, 2008, an attempt was made to schedule an appointment for a Botox shot; however, the outside doctor's office stated that they would not schedule the appointment because the office had not been paid for the plaintiff's last visit. On January 18, 2008, the plaintiff went to medical complaining of a stiff neck and a need for pain medication. On January 22, 2008, he complained that his neck was "locking up." On February 13, 2008, the plaintiff was seen in the Mental Health Clinic. It was noted that the plaintiff was suffering from severe anxiety secondary to pain from the torticollis. The doctor stated that it was unclear to him why the Botox injections by the outside neurologist had been discontinued. The doctor noted that the plaintiff received some relief from Klonopin, and his neck was twisted sharply to the left.

3

On April 3, 2008, the plaintiff was seen by the outside neurologist for Botox treatment. It was noted that payment had been made for the previous treatment (pl. supp. exhibits, doc. 29). On April 30, 2008, it was noted that the plaintiff's torticollis was "remarkably improved" after the Botox injection on April 3rd; however, the plaintiff still had pain. The plaintiff's neurologist recommended that the plaintiff continue on the Neurontin and Klonopin. Another Botox injection is scheduled for July 3, 2008 (Def. supp. exhibits, doc. 30).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

4

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff alleges that the prison medical staff failed to follow the recommendations of his outside physicians who recommended that he be given Botox injections. He states that while he was given one injection on August 31, 2007, and he was supposed to receive injections every three months thereafter (pl. resp. m.s.j. 2). As noted above, the plaintiff's next injection was given on April 3, 2008.

The defendants argue that the plaintiff's complaint is nothing more than a disagreement over the appropriate course of treatment to be given for his medical condition. This court agrees. The defendants argue that Dr. Alewine followed a protocol that would allow for the exhaustion of other options prior to the administration of Botox for treatment of the plaintiff. Dr. Alewine testified in his affidavit that there are three main approaches to the treatment of torticollis: oral medications, injections of therapeutic agents directly into the dystonic muscle, and surgery. Physical therapy may also be useful. Dr. Alewine

5

recommended a "treatment approach of maximizing the use of oral medications along with physical therapy prior to subjecting the plaintiff to Botox injections." Dr. Alewine notes that the plaintiff received a "strong recommendation" for Botox from an outside neurosurgical consultant on May 11, 2007, and by May 24, 2007, Dr. Alewine had approved the administration of Botox. The plaintiff was seen by the neurologist on August 8, 2007, and the Botox shot was given on August 31, 2007. Dr. Alewine states that when Botox was administered, the treatment met with mixed results, but additional treatment is planned (Alewine aff. ¶¶ 11-20).

Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a healthcare provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

In order to establish that he has been subjected to cruel and unusual punishment, the plaintiff must prove that the deprivation of a basic human need was, objectively, sufficiently serious and that, subjectively, the officials acted with a sufficiently culpable state of mind. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993)(quoting

6

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  What suffices as a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Courts have traditionally attempted to avoid intervening and dictating the medical care of prisoners.  As noted by the Fourth Circuit, courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . .[which] remains a question of sound professional judgment."  *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

With respect to the subjective component of deliberate indifference, while an "express intent to inflict unnecessary pain is not required . . . [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Mere disagreement between an inmate and a physician over the appropriate form of treatment is not an actionable constitutional claim.  *Wright v. Collins*, 766 F2d 841, 849 (4th Cir. 1975).  Here, the plaintiff has failed to show the subjective component of deliberate indifference by Dr. Alewine, and thus his claim fails.

The plaintiff alleges that defendant Ozmint "knew that there were serious problems with the medical care system at Broad River and that he failed to correct those problems" (pl. supp. opp. 2).  The plaintiff has presented no evidence that Director Ozmint was personally involved in his medical care.  Further, the evidence does not show the elements necessary to establish a claim under a supervisory theory.  The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits.  *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977).  The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate:  (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and

7

unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to establish these elements and, accordingly, his claims against Director Ozmint fail.

The defendants also argue that, to the extent the plaintiff raises his claims against them in their individual capacities, they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

8

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity on these claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' supplemental motion for summary judgment (doc. 18) be granted. The defendants' original motion for summary judgment (doc. 6) is hereby rendered moot.

s/William M. Catoe
United States Magistrate Judge

June 12, 2008

Greenville, South Carolina