**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Jimmy Wilson, #295782, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 6:07-3889-PMD-WMC |
| v. ) | |
| ) | |
| Dr. Glenn Alewine; and ) | **ORDER** |
| Director Jon Ozmint ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiff Jimmy Wilson ("Plaintiff"), an inmate at MacDougall Correctional Institution, filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Defendants filed a Motion for Summary Judgment and Plaintiff filed a Motion to Amend his Complaint, which was granted. Defendants then filed a supplemental Motion for Summary Judgment. The record contains the Report and Recommendation ("R&R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636 (b)(1)(B), which recommends that Defendants' supplemental Motion for Summary Judgment be granted, and Defendants' original Motion for Summary Judgment be deemed moot. A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. 636 (b)(1). Plaintiff filed timely objections to the Magistrate Judge's recommendations.

**BACKGROUND**

Plaintiff, a state prisoner proceeding *pro se*, brought this suit pursuant to 42 U.S.C. § 1983 against Dr. Glenn Alewine, a physician employed by the South Carolina Department of Corrections ("SCDC"), and Jon Ozmint, the Director of the SCDC. Plaintiff alleges that Defendants violated his constitutional rights by failing to provided him with an appropriate course of medical treatment

during his incarceration at Broad River Correctional Institution; that Dr. Alewine has ignored a course of treatment that would be beneficial to his various medical condition and that the Director has created an environment "in which denial of medical care is a virtual certainty." (Pl.'s Am. Comp. ¶ 21(c).) Plaintiff suffers from a condition known as spasmodic torticollis or cervical dystonia, which Plaintiff contends causes uncontrollable and severe muscle contractions, pain, and limited range of motion in his neck. *Id*. ¶¶ 6-10. Because of this condition and other medical complaints, Plaintiff has encountered the medical staff at SCDC in excess of 400 times since his incarceration in August of 2003. (Alewine Aff., Ex. 1, Medical Records). To treat his condition, Plaintiff contends that Botox injections are needed and necessary. (Pl.'s Am. Comp. ¶¶ 11-13). Plaintiff basis this contention on the recommendation of several medical specialists, who he claims have advised such treatment for similarly afflicted patients. *Id.* ¶ 11.

Plaintiff was given a recommendation for Botox injections by Dr. Andrew Freese, an outside neurosurgical consultant, on March 13, 2007 and again on May 9, 2007 during a follow-up visit. (Medical Records Ex. 1, Part 7). It appears that Dr. Alewine approved this procedure no later than May 24, 2007 and after being examined by the treating neurologist on August 8, 2007, Plaintiff received a Botox injection on August 31, 2007. (Alewine Aff. ¶¶ 18-20). Throughout this period, the record indicates that Plaintiff was receiving Neurontin and Klonopin, which are two medications approved for the treatment of torticollis. (Medical Records ex. 1, part 6). After this initial Botox injection, on September 26, 2007, it was noted in Plaintiff's medical records that he was having "some relief." Additionally, it was also noted that Plaintiff requested and received a prescription for an increased dosage of Neurontin, which had been found effective for his treatment. (Medical Records Ex.1, Part 7). The record also reflects that Klonopin had helped with Plaintiff's pain and

anxiety. *Id*.

When an attempt was made to schedule another Botox injection on January 7, 2008, the outside doctor's office refused to schedule the appointment because Plaintiff's last visit remained unpaid. Subsequently, on January 18, 2008, Plaintiff complained to medical of a stiff neck and a need of pain medication. Again, on January 22, 2008, Plaintiff complained to medical that his neck was "locking up." On February 13, 2008, Plaintiff was seen in the Medical Health Center and it was noted that Plaintiff was suffering from anxiety secondary to pain from torticollis. At that time, the doctor stated that it was unclear why the Botox injections by the outside neurologist had been discontinued. Then, on April 3, 2008, seven months after the initial Botox injection, Plaintiff received another Botox injection from the outside neurologist and it was noted on April 30, 2008 that Plaintiff's condition was "remarkably improved," but he still had pain. Another Botox injection was scheduled for July 3, 2008. In the meantime, Plaintiff's neurologist recommended that Plaintiff continue receiving Neurontin and Klonopin. (Defs.' Supp. Exhibits, Doc. 30).

## **PROCEDURAL HISTORY**

On September 12, 2007, Plaintiff, a state prisoner proceeding *pro se*, filed an action in the Court of Common Pleas for the Fifth Judicial Circuit alleging medical malpractice and violations of his constitutional rights. On December 4, 2007, Defendants removed the case to the United States District Court for the District of South Carolina. Then, on January 15, 2008, Defendants filed a Motion for Summary Judgement. On January 25, 2008, in response to Defendants' Motion for Summary Judgment, Plaintiff filed a Motion for an Extension of Time to Respond, which was granted on that same date. Then, on February 8, 2008, Plaintiff filed a Motion to Amend the Complaint, which the court granted on February 26, 2008. Defendants subsequently filed a

3

Supplemental Motion for Summary Judgement on March 12, 2008, to which Plaintiff filed a Response in Opposition on March 14, 2008. Defendants filed a Reply on March 18, 2008, and Plaintiff filed a Sur-reply on March 26, 2008. Then, on June 12, 2008, Magistrate Judge William M. Catoe filed a Report & Recommendation, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). [79]. The R&R recommended to the court that Defendants' Supplemental Motion for Summary Judgment be granted. The R&R further recommended that any other outstanding motions be deemed moot. On June 27, 2008, Plaintiff filed timely objections to the Magistrate Judge's R&R.

## STANDARD OF REVIEW

### A.    Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). This court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portions of the report and recommendation to which objections are made and the basis for those objections. *Id.* After a review of the entire record, the R&R, and Plaintiff's objections, the court finds that the Magistrate Judge summarized the facts and applied the correct principles of law. Accordingly, the R&R is adopted in full and specifically incorporated into this Order.

### B.    Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather

4

must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## **OBJECTIONS**

The Magistrate Judge recommended to the court that Defendants' Supplemental Motion for Summary Judgment be granted because Plaintiff has not shown deliberate indifference to a serious medical need by any of the Defendants and Defendants are entitled to qualified immunity because the Plaintiff has failed to demonstrate that the actions of the Defendants violated any of his constitutional rights. (R&R at 4-9.)

Plaintiff objects to the recommendation, asserting that the Magistrate Judge failed to consider the hardship placed on the Plaintiff by Defendant Alewine's refusal to provide Plaintiff with

recommended Botox treatment and that Defendant Alewine's refusal to provide Plaintiff with Botox treatment as recommended by numerous medical specialists constituted deliberate indifference. (Objections at 2-4.)

It is well established that deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). To prove a claim of deliberate indifference to a serious injury under the Eighth Amendment, a plaintiff must show that a defendant's "action or inaction [1] result[ed] in or creat[ed] a sufficiently serious risk of a deprivation that objectively results in denial of the 'minimal civilized measure of life's necessities' and [2] a 'sufficiently culpable state of mind.'" *Winfield v. Bass,* 106 F.3d 525, 531 (4th Cir. 1997) (quoting *Farmer v. Brennan,* 511 U.S. 825, 831-34 & n. 2 (1994)). In order to be liable for deliberate indifference, the plaintiff must prove that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also that he had drawn the inference. *See Young v. City of Mount Rainer*, 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care."). The mere fact that a prisoner disagrees with a physician over the appropriate form of treatment is not an actionable constitutional claim. *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1975). Moreover, a "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Gamble,* 429 U.S. at 106.

While Plaintiff claims in his Objections that the Magistrate Judge failed to understand both the severity of his condition and that Botox treatments were a needed and necessary part of

6

Plaintiff's treatment, there is no evidence of that in Magistrate's R&R. Instead, it is evident that Plaintiff's primary objection to the Magistrate's R&R is still a disagreement over the form of his medical treatment, which is not an actionable constitutional claim. *See Collins,* 766 F.2d at 849. As Dr. Alewine testified in his affidavit, there are three main approaches to the treatment of torticollis: oral medication, injections of therapeutic agents directly into the dystonic muscle, and surgery. Also, he recommended that physical therapy may also help. (Alewine aff. ¶ 11.) For the Plaintiff, he recommended a treatment approach maximizing the use of oral medications along with physical therapy prior to subjecting the plaintiff to Botox injections. *Id.* ¶ 12. In accordance with this approach, Plaintiff received Neurontin and Klonopin, which are two medications approved for the treatment of torticollis. (Medical Records Ex. 1, Parts 1-7.) On the recommendation of an outside neurosurgical consultant, Plaintiff did eventually receive Botox injections on August 31, 2007 and again on April 3, 2008. (Alewine Aff. ¶¶ 18-21.)

In assessing the effectiveness of the initial Botox injection on August 31, 2007, Dr. Alewine testified that "Plaintiff has shown mixed results." *Id.* ¶ 20. In his Objections, Plaintiff disputes this assessment and suggests that it was fabricated in order to delay further Botox injections, which were costly. To support this contention, Plaintiff offered the affidavit of another prisoner, who testified that he observed a "big difference in [Plaintiff's] appearance" after the initial Botox injection. (Russell Cain Aff. Ex. D, ¶ 7.) Other than this affidavit given by a party with no firsthand knowledge of Plaintiff's condition or treatment, however, there is no evidence in the record to support Plaintiff's contention that medical treatment was denied based on cost alone. Instead, the record reflects that Plaintiff received substantial treatment of various types on numerous occasions, but that Plaintiff disagreed with the form of treatment. As the Magistrate Judge correctly noted, a

disagreement over the form of medical treatment is not a cognizable constitutional claim. *See Collins,* 766 F.2d at 849. Accordingly, summary judgment was appropriate on this matter.

The Magistrate Judge also correctly concluded that the Plaintiff failed to establish that Dr. Alewine was deliberately indifferent to his serious medical needs in allegedly refusing Botox treatment. Deliberate indifference is a "very high standard - a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). As already noted, in order to establish deliberate indifference, a plaintiff must prove that the deprivation of a basic human need was, objectively, sufficiently serious and that, subjectively, the official acted with a sufficiently culpable state of mind. *See Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the subjective component of deliberate indifference, the Magistrate Judge correctly concluded that Plaintiff failed to show that Dr. Alewine acted with a culpable state of mind. (R&R at 7.) While Plaintiff maintains in his Objections that Dr. Alewine interfered with his medical treatment for non-medical reasons, as already noted, the record does not support this contention. Instead, the record reflects that Plaintiff consulted with medical personnel over 400 times since 2003, received a number of different types of treatment on numerous occasions, but that Plaintiff disagreed with the form of treatment. Accordingly, the Magistrate Judge correctly granted the Defendants' Supplemental Motion for Summary Judgment.

## **CONCLUSION**

For the foregoing reasons the court adopts in full the recommendation of the Magistrate Judge and **ORDERS** that Defendants' Supplemental Motion for Summary Judgment is **GRANTED**.

**AND IT IS SO ORDERED.**

*[signature]*
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**October 31, 2008**